■ In the Matter of URSULA O'MARAH, Respondent, v. ARTHUR LEVITT, as Comptroller of the State of New York, Appellant.— Appeal from a judgment of the Supreme Court at Special Term, entered May 12, 1972 in Albany County, which, in a proceeding pursuant to CPLR article 78, directed appellant to entertain petitioner's application for accidental disability retirement benefits under section 63 of the Retirement and Social Security Law. Petitioner had for some time been employed at the St. Lawrence State Hospital when she was injured in the course of her duties on April 17, 1967. After exhausting her paid sick leave, she was granted leave without pay commencing August 31, 1967. When this leave expired, petitioner did not return to her position, and was deemed to have resigned as of October 18, 1968. On October 11, 1969 petitioner applied for accidental disability retirement benefits under section 63. The appellant disapproved her application upon the ground that it had not been filed within "two years after the member is first discontinued from service" (Retirement and Social Security Law, § 63, subd. a, par. 3). After a request by petitioner for redetermination, a hearing was held and a final determination issued confirming appellant's disapproval. Petitioner instituted an article 78 proceeding seeking review of that determination. Special Term concluded that the statutory two-year period of limitations should have been measured from October 18, 1968, the effective date of petitioner's resignation, and directed appellant to entertain the application. We disagree. Subdivision a of section 63 provides, in pertinent part, as follows: "a. A member shall be entitled to an accidental disability retirement allowance if, at the time application therefor is filed, he is: * * * 3. Actually in service upon which his membership is based. However, in a case where a member is discontinued from service subsequent to the accident, either voluntarily or involuntarily, application may be made not later than two years after the member is first discontinued from service". At the outset, we note that the two-year limitation upon filing applications appears in the statute in the form of an exception to the requirement that the applicant must be "Actually in service" at the time of filing, and as such must be given a narrow construction. Moreover, it is not necessary for us to limit ourselves to such technical rules of statutory construction in deciding this case, for the plain meaning of the words employed leads us to the same result. The term " discontinued from service " must, of course, refer to the cessation of remunerative employment resulting from a disability, not to the time when a sick leave taken as a result of such disability terminates. In the present case respondent first discontinued her service with the State *because of her disability* when she commenced unpaid leave of absence on August 31, 1967. The statute does not speak of "retirement", or even "resignation", but of "discontinuance", which is defined as a "cessation", and it is, therefore, from the time respondent ceased to be an active employee* that she must be deemed to have been "first discontinued from service". Since the determination of the Comptroller, who has in the first instance the authority to interpret those statutes which he is charged with administering, had a reasonable basis

---

* It is assumed for purposes of this discussion that respondent remained an "active employee" while on paid sick leave.

in law, it should not have been disturbed by Special Term. Judgment reversed, on the law and the facts, and petition dismissed, without costs. Greenblott, J. P., Sweeney and Main, JJ., concur; Cooke and Kane, JJ., dissent and vote to affirm in separate memoranda. Cooke, J. (dissenting). The single issue presented is whether the two-year period within which petitioner could apply for accidental disability retirement under section 63 of the Retirement and Social Security Law began at the commencement or termination of her leave of absence. Its determination depends upon the interpretation placed upon the words "first discontinued from service" in subdivision a of section 63 which provides that a member of the New York State Employees' Retirement System, otherwise qualified, is entitled to an accidental disability retirement allowance if application therefor is made "not later than two years after the member is first discontinued from service". In 1956, section 63 of the Retirement and Social Security Law was amended to its present form (L. 1956, ch. 926), the amendment providing that application for disability retirement could be made only by a member of the retirement system actually in service or by a member discontinued from service subsequent to the accident "not later than two years after the member is first discontinued from service". That a member is not discontinued from service while on a leave of absence is obvious from memoranda to the Governor in support of the amending legislation (Bill Jacket Collection on L. 1956, ch. 926, N. Y. S. Legislative Reference Library). One dated April 9, 1956 from the Deputy Comptroller to the Governor stated, in reference to the then pending proposed amendment: "This bill was sponsored by this Department, and amends Section 79 of the Civil Service Law, and Section 63 of the Retirement and Social Security Law, to require that an application for accidental disability retirement of a member of the New York State Employees' Retirement System must be filed while the member is actually in service, or not later than two years after his separation from service." Another, from the Counsel of the State Commission on Pensions dated April 5, 1956, observes: "This bill, sponsored by the State Employees' Retirement System, seeks to clarify the conditions under which a member may be entitled to accidental disability retirement. It provides that the application for such retirement must be made before the member attains age 60, and that he must be in service when the application is filed. Where he is separated from the service after the accident, he may make application for accidental disability not later than two years after he had been separated from the service." This court in *People ex rel. Davie* v. *Lynch* (164 App. Div. 517) held at page 521: "But it is hardly necessary to resort to the statute for an interpretation of the conditions here. The language of the Commissioner to the relator in his letter was plain and unambiguous. His words must be given their ordinary meaning in English. He stated to the relator, 'you have been granted an indefinite leave of absence without pay.' These words could have but one meaning. * * * Instead of that disposition of her matter he granted her 'an indefinite leave of absence;' that is to say, a right to be away from her work indefinitely, and, therefore, by corollary, a right to come back whenever she pleased. * * * If there were no limitation or interpretation in the statute, the words 'separation from service' could never be held to include a leave of absence from the service. If the relator had a right at any minute to return to the service she was no more separated from it than an employee is when on an ordinary two weeks vacation. The right to return in the latter case is fixed and definite; in the former case it is not fixed and is indefinite; but in each case there is the *right* to return, and, therefore, the employee is not separated from, but connected with, the service." In *Matter of Weiher* v. *Greene* (239 App. Div. 652), in interpreting

section 19 of the Civil Service Law, from which present section 79 was derived, we observed at page 654: " In our opinion respondent was not separated from the service while absent on leave." Further support for the proposition that petitioner was not discontinued from service while on her leave of absence is found in *Matter of Silson* v. *New York State Employees' Retirement System* (208 Misc. 59, affd. on opn. below 286 App. Div. 936), decided before the 1956 amendment to section 63, where it was stated by Special Term at page 62: " An employee might be injured on the last day of his pay period and never again be able to return to work. If he had no sick leave to his credit and was not granted a leave of absence, either with or without pay, he would not, according to the contention of the respondents, ever again be in service." In *Thompson* v. *Young* (63 F. Supp. 890), involving a policeman granted a leave of absence, it was held at page 891: " The decedent Myron E. Thompson was granted *leave of absence without pay*. Apart from any extrinsic consideration, the natural meaning of this language is not that he was no longer in the service of the Police Department, but that he was temporarily excused from performing his active duties as a policeman. * * * The defendants urge that the decedent only had the right to apply for his former position after his discharge from the Marine Corps. His death, however, prevented his return. His leave of absence was in the nature of a furlough and did not terminate his membership in the police force. He did not ' retire ' from the police force. This is inconsistent with the contention that they do not remain members of the police force." A leave of absence having been granted to petitioner to October 18, 1968, she was still considered in service (note the distinction in the phrase " Actually in service " otherwise appearing in the statute) and could make application not later than two years after termination of said leave. The judgment of Special Term should be affirmed. Kane, J. (dissenting). I vote to affirm the decision of Special Term. After exhaustion of her accrued leave credits, petitioner was granted a leave without pay. A leave without pay is considered continuous service in several respects (Civil Service Law, § 52, subd. 3, § 80, subd. 2, § 130, subd. 3, par. [e]) and one granted such a leave continues to be a " member " of the retirement system (see Retirement and Social Security Law, § 40, subd. f). It is inconsistent therefore to conclude that one on a leave of absence is in service for some purposes and not for others. Under section 79 of the Civil Service Law, predecessor to section 63 of the Retirement and Social Security Law, Supreme Court held that " a reasonable construction of the statute is that the words ' in service ' were intended to require that the injured employee must be in service at the time he suffered the injury but do not require that the injured employee must be in service at the time he makes application for disability benefits " (*Matter of Silson* v. *New York State Employees' Retirement System*, 208 Misc. 59, 62, affd. 286 App. Div. 936). To overcome the result of *Silson* insofar as it removed any limitation in time as to date of application, the Legislature passed section 63 providing the two-year limitation from discontinuance of service. In *Matter of Clark* v. *Levitt* (35 A D 2d 404), while interpreting section 78-a of the Civil Service Law (ordinary disability retirement) and paralleling it to section 79, we avoided a similar consequence relying on the reasoning in *Silson*. These cases, together with the legislative history, indicate that the obvious purpose of the amendment was to fix a time limit within which a disabled State employee could apply for a disability retirement, measured from the date upon which the employee is no longer " in service ".